William A. O'KEEFE, Petitioner,

v.

UNITED STATES POSTAL SERVICE, Respondent.

No. 01–3280.

United States Court of Appeals, Federal Circuit.

DECIDED: Nov. 6, 2002.

Jose Luis Ongay, of Philadelphia, PA, argued for petitioner.

Stephen J. Boardman, Appellate Counsel, Civil Practice, United States Postal Service, of Washington, DC, argued for respondent. On the brief were Eric J. Scharf, Managing Counsel; and David G. Karro, Attorney, Appellate Division, Civil Practice. Of counsel was Brian M. Reimer, Attorney. Of counsel on the brief were Robert D. McCallum, Jr., Assistant Attorney General, Commercial Litigation Branch, Civil Division, Department of Justice of Washington, DC; and David M. Cohen, Director. Of counsel were Todd M. Hughes, Assistant Director; and Lauren S. Moore, Attorney.

Before CLEVENGER, BRYSON, and PROST, Circuit Judges.

PROST, Circuit Judge.

William A. O'Keefe ("O'Keefe") petitions for review of the decision of the Merit Systems Protection Board ("Board"), No. PH–0752–00–0022–I–1, affirming the decision by the administrative judge that O'Keefe engaged in improper conduct, but reversing the judge's mitigation of the agency's penalty from removal to a sixty-day suspension. We have jurisdiction under 5 U.S.C. § 7703(b)(1). We vacate the Board's decision and remand this case for further proceedings consistent with this opinion.

## BACKGROUND

On September 2, 1999, the United States Postal Service ("Postal Service") issued O'Keefe a letter of proposed removal, claiming that he engaged in "improper conduct/fraudulent use of personal identifiers." The Notice accuses O'Keefe of improperly using the personal information of a co-worker, Joseph Cummins ("Cummins"), to help another co-worker, Valerie Davis Taylor ("Taylor"), obtain a mortgage.

The alleged plan to help Taylor obtain a mortgage developed from Taylor's having made an $18,000 deposit towards the purchase of a new home, without first securing approval for a mortgage. In late 1996, Taylor applied for a mortgage with American Financial Mortgage Corporation, but was told that she was unable, on her own, to qualify for the loan. To avoid losing her deposit, Taylor and O'Keefe approached Cummins and asked if he would assist Taylor in obtaining the mortgage. Cummins agreed, at least initially. On October 27, 1996, someone completed a loan application, employment verification request, and credit verification request in the name of Joseph Cummins. These forms contained Cummins' personal information, including his address, social security number, and description of assets and liabilities. Someone signed Cummins' name on the forms. The employment verification form was sent to Cummins' employer, Mr. Henzy at the Havertown Branch Post Office. Mr. Henzy completed the form, returned it to the mortgage company, and gave a copy to Cummins, who expressed confusion about the form because he claimed to have no knowledge of applying for a mortgage. Cummins stated that the signature on the form was not his own and that he did not give anyone permission to use or sign his name. Mr. Henzy then initiated an investigation that

eventually led to the removal and arrest of O'Keefe and Taylor.

O'Keefe denies that he completed the mortgage application and related forms using Cummins' name and information. However, he does admit that he accompanied Taylor to the build site of the home she wished to purchase and identified himself to the builder as Cummins. O'Keefe also admits calling the mortgage company on at least one occasion, purporting to be Cummins. According to O'Keefe, Cummins consented to these actions when he agreed to help Taylor obtain a mortgage. Cummins, on the other hand, contends that he withdrew his consent shortly after agreeing to help Taylor.

In November 1998, O'Keefe and Taylor were arrested for theft and forgery based on their attempt to help Taylor obtain the mortgage. The charges against O'Keefe were dismissed when he completed the Accelerated Rehabilitative Disposition Program. On September 2, 1999, the Postal Service issued its notice of proposed removal. O'Keefe failed to respond to the notice and on October 4, 1999, the Postal Service terminated O'Keefe's employment. O'Keefe then filed an appeal with the Board. After a hearing, the administrative judge found that O'Keefe engaged in improper conduct by using Cummins' personal information without his consent, but that the penalty of removal should be mitigated to a sixty-day suspension because removal exceeded the bounds of reasonableness. *O'Keefe v. United States Postal Serv.*, No. PH–0752–00–0022–I–1, slip op. at 12, 16 (M.S.P.B. Mar.28, 2000) ("Initial Decision"). The Postal Service then filed a petition for review with the Board, which reinstated the agency's penalty of removal because it found O'Keefe's conduct to be egregious and removal a reasonable penalty. *O'Keefe v. United States Postal Serv.*,

88 M.S.P.R. 475, 478–82 (M.S.P.B.2001) ("*Final Decision*").

O'Keefe now petitions for review of the Final Decision, arguing that his conduct was not so egregious as to warrant removal and, moreover, that removal is an unreasonably harsh penalty when all of the relevant factors are considered under *Douglas v. Veterans Administration*, 5 MSPB 313, 5 M.S.P.R. 280, 305–06 (1981). O'Keefe also argues that the administrative judge erred by not informing him that he needed to present sworn testimony in support of his version of what happened, thus leading the judge to erroneously conclude that O'Keefe engaged in improper conduct. According to O'Keefe, who appeared pro se, the judge should have told him that his unsworn statements were not evidence.

## I

■ In reviewing a final decision of the Merit Systems Protection Board, this court

shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be—(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence; . . . .

5 U.S.C. § 7703(c) (2000). "When, as here, the decision of the full board differs from that of its presiding official [the administrative judge], this court will engage in a more searching scrutiny of the record." *Connolly v. United States Dep't of Justice*, 766 F.2d 507, 512 (Fed.Cir.1985).

■■ An agency's decision "to dismiss a federal employee must have a 'rational basis supported by substantial evidence from the record taken as a whole.'" *Mitchum v. Tenn. Valley Auth.*, 756 F.2d 82, 85 (Fed.Cir.1985) (quoting *VanFossen v. Dep't of Hous. & Urban Dev.*, 748 F.2d

1579, 1580 (Fed.Cir.1984)). When all of the agency's charges are sustained, the agency's original penalty may nevertheless be mitigated to a maximum reasonable penalty when the agency's penalty is too severe. *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed.Cir.1999).

■ The administrative judge found that the Postal Service's removal of O'Keefe was too severe a penalty because several factors weighed in favor of mitigation, including:

First, while the charged act of misconduct is serious, it is not egregious. Second, the appellant's more than 28 years of service of consistently satisfactory service is a significant factor to be considered. Third, the record does not show that the appellant gained financially from his misconduct. Fourth, the appellant's potential for rehabilitation.

Initial Decision at 15. The Board disagreed with the administrative judge, finding that O'Keefe's conduct was egregious. Final Decision at 5–6. The Board's opinion, however, is based on an erroneous version of the facts that is not supported by the record or the original charge against O'Keefe.

First, the Final Decision states that O'Keefe filed the mortgage application using Cummins' personal information. *Id.* at 2, 6. The Notice of Proposed Removal, however, does not specifically charge O'Keefe with filing the mortgage application. Rather, to support the general charge of "improper conduct/fraudulent use of personal identifiers," the Notice specifies that

Engaging in Criminal Activity is a violation of Postal Service regulations contained in the Postal Service Code of Ethical Conduct. By your actions you are in violations of but not limited to the following sections of the Employee and Labor Relations Manual part 666.2 Be-

havior and Personal Habits and 661.53, Unacceptable Conduct, which states:

> "No employee will engage in criminal, dishonest, notoriously disgraceful or immoral conduct. Conviction of any criminal statute may be grounds for disciplinary action by the Postal Service."

> By your actions you have violated the provisions of the Employee and Labor Relations Manual, [including] but not limited to, the Code of Conduct, and the Administrative Support Manual. Your behavior can not and will not be tolerated by the United States Postal Service.

While the Notice details various suspected aspects of Taylor's attempt to secure a mortgage, the only conduct specifically attributed to O'Keefe is his arrest, his admission that he accompanied Taylor to the home site while purporting to be Cummins, and his admission that he called American Financial Mortgage Company purporting to be Cummins. The Notice does not accuse O'Keefe of forging and filing the mortgage application. The agency's counsel also stated at the hearing before the administrative judge that "we never charged him with signing the forms."

Similarly, the Final Decision states that the "investigative memorandum indicates that the appellant and Taylor even went so far as to falsify Cummins' address on W 2 forms so that it would appear that Cummins lived with Taylor." *Id.* at 5. In fact, the two Investigative Memoranda in the record implicate Taylor for falsifying Cummins' W–2 forms, which Taylor admitted faxing to American Financial Mortgage Company. The Notice of Proposed Removal also did not specifically charge O'Keefe with falsifying Cummins' address on the W–2 forms. Rather, the Notice merely reported that O'Keefe told the investigator that he "never saw Mr. Cummins' W–2 or pay stubs" and that he "did

not know why Mr. Cummings' [sic] address would be changed on his W 2 unless it was to look like Mr. Cummins lived with Ms. Taylor." The administrative judge's opinion does not refer to these W–2 forms as a basis for sustaining the agency's charge against O'Keefe. To the contrary, the Initial Decision notes that the evidence "fails to establish any participation on the part of the appellant, other than by suggestion and innuendo." Initial Decision at 8 n. 4.

Finally, the Board's assessment of the egregiousness of O'Keefe's conduct rests in part on its belief that O'Keefe "obtained Cummins' mother's maiden name without revealing his purpose to use the name in the mortgage application process." Final Decision at 6. In fact, Cummins' mother's maiden name appears nowhere on the mortgage application papers in the record. And, as with the other items of misinformation relied on by the Board, the Notice of Proposed Removal makes no charge against O'Keefe for misusing Cummins' mother's maiden name. The Notice merely states that "Mr. Cummins advised that you had a relationship with Ms. Taylor and that you had previously inquired to Mr. Cummins mothers maiden name." Neither of these facts, even if true, constitutes wrongdoing or is sufficient to support the Board's conclusion that O'Keefe did in fact misuse Cummins' mother's maiden name on the mortgage application.

The Board's reliance on erroneous facts to determine that O'Keefe's conduct was egregious and, therefore, that the agency's penalty should not be mitigated, is an abuse of discretion for two reasons. "The Board necessarily abuses its discretion when it rests its decision on factual findings unsupported by substantial evidence." *Pyles v. Merit Sys. Prot. Bd.,* 45 F.3d 411, 414 (Fed.Cir.1995). As detailed above, many of the facts relied on by the Board

are not supported by the record. The Board's determination that O'Keefe's conduct was egregious based on these unsupported facts cannot stand.

 The Board also abused its discretion by exceeding the scope of the Notice of Proposed Removal. Only the charge and specifications set out in the Notice may be used to justify punishment because due process requires that an employee be given notice of the charges against him in sufficient detail to allow the employee to make an informed reply. *See Brook v. Corrado,* 999 F.2d 523, 526–27 (Fed.Cir. 1993); *Lachance v. Merit Sys. Prot. Bd.,* 147 F.3d 1367, 1371 (Fed.Cir.1998). The Board's review of the agency's decision is likewise limited solely to the grounds invoked by the agency. *McIntire v. Fed. Emergency Mgmt. Agency,* 55 M.S.P.R. 578, 583 n. 4 (1992) (stating that the Board will not consider allegations of misconduct related to the charges "because they were not specified in the agency's proposal notice"); *Riley v. Dep't of the Army,* 53 M.S.P.R. 683, 688 (1992) (finding that the administrative judge erred by sustaining a charge that was not specified by the agency). Nor may the Board substitute what it considers to be a better basis for removal than what was identified by the agency. *Shaw v. Dep't of the Air Force,* 80 M.S.P.R. 98, 106–07 (1998) ("The Board cannot adjudicate an adverse action on the basis of a charge that could have been brought but was not. Rather, the Board is required to adjudicate an appeal solely on the grounds invoked by the agency, and it may not substitute what it considers to be a more appropriate charge." (citations omitted)); *Riley,* 53 M.S.P.R. at 688; *Gottlieb v. Veterans Admin.,* 39 M.S.P.R. 606, 609–10 (1989) (reversing a judge's adjudication that the agency proved a charge on different grounds than those stated in the charge itself). By accusing O'Keefe of specific misdeeds that were not within the scope of the Notice of Proposed Removal,

the Board has exceeded the scope of its review of the agency's decision. As such, the Board has abused its discretion in finding that O'Keefe's conduct was so egregious as to require removal.

Because the Board's conclusion that O'Keefe's conduct was egregious relies on facts that are neither supported by substantial evidence nor contained within the charge against O'Keefe, we vacate the Board's reversal of the administrative judge's mitigation of the agency's penalty and remand for further proceedings consistent with this opinion.

II

O'Keefe argues that his Fifth Amendment due process rights were violated in this case because the administrative judge failed to advise O'Keefe, a pro se appellant, that he needed to present sworn testimony in support of his case. O'Keefe did not testify under oath at the hearing before the administrative judge. Instead, he presented his case through cross-examination of the agency's witnesses, direct examination of other witnesses, and closing argument. According to O'Keefe, he thought that he sufficiently presented evidence in support of his version of what happened and that at all times he was subject to the penalties of perjury. O'Keefe believes that his Fifth Amendment rights to due process were violated because the ultimate issue of whether the agency proved the charge came down to a credibility determination by the administrative judge as to whether to believe O'Keefe or Cummins. As a pro se appellant, O'Keefe claims that he should have been advised that his version could not be credited without supporting sworn testimony and that he was thus deprived of a fair and impartial opportunity to defend himself.

O'Keefe is correct that the administrative judge's decision depended in large part on whether to believe Cummins or O'Keefe. In particular, the judge "credit[ed] Mr. Cummins' testimony that while he agreed to help Ms. Taylor, he did not give her or the appellant permission to use his personal information to apply for a mortgage." Initial Decision at 9. The judge also noted that the "only evidence in the record that refutes Mr. Cummins' sworn testimony regarding his lack of consent are the unsworn statements of the appellant and Ms. Taylor given to Insp. Cunicelli during his investigation and the detailed nature of the mortgage application." *Id.* at 10. The administrative judge then concluded that these unsworn statements were unreliable hearsay.[1] *Id.* at 11.

One of the pivotal disputed facts in this case—when Cummins withdrew his consent to help Taylor—was resolved by the administrative judge based on O'Keefe's failure to provide sworn testimony to contradict Cummins' sworn testimony. *Id.* at 10–11. Cummins testified that he withdrew his consent to help Taylor obtain a mortgage three weeks after agreeing to help, before the mortgage application forms were filled out and signed with his name. O'Keefe claims that Cummins withdrew his consent much later and that he and Taylor dropped the attempt to obtain a mortgage after Cummins changed his mind. One postal employee corroborated O'Keefe's version by testifying that Cummins told him as late as January 1997 that he was helping Taylor obtain a mortgage. Nevertheless, the judge concluded that she "[could] not find that the unsworn state-

ments made by the appellant and Ms. Taylor, who are obviously interested parties, outweigh[ed] the sworn testimony of Mr. Cummins" and that O'Keefe "advanced no evidence to corroborate his version that Mr. Cummins authorized his actions." *Id.* at 11.

While we are not prepared to say that O'Keefe's Fifth Amendment rights have been violated by the judge's failure to instruct him about the need for sworn testimony, we do note that the Board appears to have imposed a special duty on administrative judges to assist pro se appellants. The Board's regulations require judges to "conduct fair and impartial hearings," granting judges "all powers necessary" to meet this requirement. 5 C.F.R. § 1201.41(b) (2002). To that end, "[t]he Board has held that administrative judges should provide more guidance to pro se appellants and interpret their arguments in the most favorable light." *Miles v. Dep't of Veterans Affairs,* 84 M.S.P.R. 418, 421 (1999); *see also Patterson v. United States Postal Serv.,* 71 M.S.P.R. 332, 335 (1996), *aff'd,* 106 F.3d 425 (Fed.Cir.1997) (Table). Moreover, "the Board and its administrative judges have an obligation to inform the parties what is required to establish their cases. This obligation is particularly significant where, as here, the appellant is appearing pro se." *Harless v. Office of Pers. Mgmt.,* 71 M.S.P.R. 110, 113 (1996) (remanding because the administrative judge failed to instruct the appellant that he must support his claim of financial hardship with appropriate evidence); *see also Goodnight v. Office of Pers. Mgmt.,* 49 M.S.P.R. 184, 187–89 (1991) (stating that

---

1. The two Investigative Memoranda are themselves of questionable value because they are incomplete. When Inspector Cunicelli interviewed O'Keefe, O'Keefe provided the Inspector with a sworn signed statement presenting O'Keefe's version of the facts. The July 8, 1999, Investigative Memorandum and an undated Memorandum of Interview acknowl-

edge that O'Keefe provided this two-page statement, which seems to have since disappeared. Initial Decision at 10 n. 7. In addition, the first Memorandum was drafted fifteen months after the investigator interviewed O'Keefe; the second Memorandum was drafted two years after the interview.

"to ensure fairness, the administrative judge should have advised the appellant prior to the close of the record that she had not provided the evidence to prove her claim"); *cf. Wilson v. Dep't of Health & Human Servs.*, 834 F.2d 1011, 1012 (Fed. Cir.1987) (finding that an administrative judge should have informed appellant of deficiencies in her proof of entitlement to attorney's fees).[2]

Had O'Keefe's arguments been presented in the form of sworn testimony, we cannot say whether the administrative judge could have properly found that the agency proved the charges against O'Keefe. In addition, the Board has not had an opportunity to consider whether the administrative judge should have instructed O'Keefe about the need for sworn testimony because this issue was first raised in O'Keefe's petition to this court. (We note that O'Keefe, having apparently been satisfied with the administrative judge's mitigation of the penalty, had no reason to raise this issue until after the Board reversed the administrative judge). We believe the Board should consider this issue in the first instance on remand.

## CONCLUSION

For the foregoing reasons, we vacate the decision of the Board and remand this case for further proceedings consistent with the opinion.

*VACATE AND REMAND.*

---

2. The Board's decision to impose this duty on its administrative judges distinguishes these cases from those criminal cases where a defendant waives his right to counsel and chooses to proceed pro se. In such criminal cases, a judge is not required "to take over chores for a *pro se* defendant that would normally be attended to by trained counsel as a matter of course." *McKaskle v. Wiggins*, 465 U.S. 168, 184, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); *see also Faretta v. California*, 422 U.S. 806, 834–35 n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law.").