# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

CHARLES TUCKER,
            Appellant,

        v.

DEPARTMENT OF THE NAVY,
            Agency.

DOCKET NUMBER
SF-0752-13-0483-I-1

DATE: July 24, 2015

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Jason L. Aldrich, Esquire, San Diego, California, for the appellant.

Patricia Zengel, San Diego, California, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed the agency's removal action. For the reasons discussed below, we GRANT the appellant's petition for review and REVERSE the initial decision. The charges are NOT SUSTAINED.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

¶2      The appellant was employed as a GS-6 Police Officer at the Coronado Naval Base. Initial Appeal File (IAF), Tab 6 at 14 of 53. On February 13, 2013, the agency proposed to remove him based on two separate charges—(1) failure to follow agency policy and standard operating procedures (SOPs); and (2) improper use of force—each of which were supported by one underlying specification. *Id.* at 43 of 53. In support of the first charge of failure to follow agency policy and SOPs, the proposal notice specified that, on August 16, 2012, the appellant "pursued a privately owned vehicle beyond the jurisdictional boundaries of the Naval Base Coronado[,] [which] directly led to a physical confrontation with and injury to a civilian in the City of Coronado." *Id.* In support of the improper use of force charge, the proposal notice specified that, during the incident, "[the appellant] and another [Department of the Navy] officer initiated physical contact with a civilian . . . in the city of Coronado, although [he was] outside the jurisdictional boundaries of Naval Base Coronado had had no legal basis to do so." *Id.* The deciding official sustained both charges and their respective specifications, and the agency removed the appellant effective May 10, 2013. *Id.* at 17-20 of 53.

¶3      The appellant appealed his removal to the Board and requested a hearing. IAF, Tab 1. He asserted that the agency's charges could not be sustained because: (1) agency policy authorized his actions or, in the alternative, he did not receive adequate training to put him on notice that his conduct was prohibited; and (2) his use of force on the driver of the vehicle he was pursuing was appropriate under the circumstances. *Id.* at 4; IAF, Tab 13 at 4-10. He also argued that the penalty of removal was unreasonable. IAF, Tab 1 at 4. He did not raise any affirmative defenses. *See* IAF, Tab 14 at 2. After holding the requested hearing, the administrative judge issued an initial decision sustaining both charges and affirming the removal action. IAF, Tab 16, Initial Decision (ID). The appellant has filed a petition for review of the initial decision, arguing that: (1) the administrative judge erred in sustaining the agency's charges; and

(2) the penalty of removal was unreasonable. Petition for Review (PFR) File, Tab 1. The agency filed a response in opposition. PFR File, Tab 3.

¶4      The facts giving rise to the discipline at issue are largely undisputed. On August 16, 2012, while on duty near the perimeter of the naval base, the appellant witnessed a vehicle run a stop sign. IAF, Tab 12 at 4, Tab 13 at 5. The appellant turned on the red and blue lights of his police car and began following the vehicle. IAF, Tab 12 at 4, Tab 13 at 5. The driver of the vehicle failed to pull over and departed the base. IAF, Tab 12 at 4-5, Tab 13 at 5. The appellant continued following the vehicle off the base, turning off his red and blue lights as he exited the base. *See* IAF, Tab 12 at 4-5, Tab 13 at 5. The appellant attempted to reach the police dispatcher as he was leaving the base but was initially unsuccessful because of a problem with the radio in his police car. IAF, Tab 12 at 4, Tab 13 at 5; Hearing Transcript (HT) at 168-71. The vehicle stopped in front of a residence several blocks from the base, and the appellant also stopped and turned his red and blue lights back on. IAF, Tab 12 at 5, Tab 13 at 5-6. The driver stepped out of his vehicle and started to approach the appellant's police car but stopped walking towards the appellant when the appellant directed him to get back. IAF, Tab 12 at 5, Tab 13 at 6; HT at 169-71. The driver complied with the appellant's request for him to provide identification but refused to get back into his vehicle. IAF, Tab 12 at 5, Tab 13 at 6; HT at 171.

¶5      A second naval police officer was dispatched to the scene to assist the appellant. IAF, Tab 6 at 8-9 of 30; HT at 171-72. Upon arriving at the scene, the second officer observed the appellant and the driver, who appeared to be "irate," standing outside of their respective vehicles. IAF, Tab 6 at 10 of 84. The second officer ordered the driver to get back into his vehicle, but the driver again refused to comply. *Id.* at 6, 11 of 84. Believing the situation to be "serious," the second officer determined that the driver should be restrained, and he and the appellant approached the driver. *Id.* at 10-11 of 84. According to the appellant, the driver then "lunged his arms out" or "flailed his arms out suddenly in the direction of

the officers." IAF, Tab 6 at 6 of 84, Tab 12 at 5, Tab 13 at 6-7; HT at 172. The second officer grabbed one of the driver's arms and the appellant grabbed his other arm; together they took the driver "down to the ground." HT at 172; *see* IAF, Tab 12 at 5, Tab 13 at 6-7. The driver sustained an injury when he hit his head on one of his vehicle's tires as the two officers were taking him down to the ground. IAF, Tab 12 at 5, Tab 13 at 7. The driver continued to resist the officers, kicking his feet and clasping his hands together such that he could not be handcuffed. IAF, Tab 12 at 5, Tab 13 at 7; HT at 173-74.

¶6      During the struggle, several officers from the Coronado Police also arrived at the scene and reportedly observed two Department of Defense officers trying to control the subject, who was actively resisting. IAF, Tab 6 at 15, 17, 25 of 84, Tab 12 at 5, Tab 13 at 7. The Coronado police officers joined the attempt to restrain the driver, and one of them tased the driver three or four times until he was finally subdued. IAF, Tab 6 at 7, 25-28 of 84. The driver was thereafter transported to the hospital. *Id.* at 7 of 84.

The first charge of failure to follow policy and procedure is not sustained.

¶7      To prove a charge of failure to follow policy or procedure, an agency must show that a proper policy or procedure existed and that the employee failed to follow it, without regard to whether the failure was intentional or unintentional. *See, e.g.*, *Hamilton v. U.S. Postal Service*, 71 M.S.P.R. 547, 555-57 (1996) (finding that an agency may establish a charge of failure to follow supervisory instructions by showing that proper instructions were given to an employee and that he failed to follow them, notwithstanding whether the failure was intentional or unintentional). Generally, in an adverse action appeal, the agency must prove its charge by a preponderance of the evidence. 5 U.S.C. § 7701(c)(1)(B).

¶8      As set forth above, the agency charged the appellant with failure to follow policy and SOPs and specified that he did so when he followed the vehicle from on the base, an area where he had jurisdiction, to off the base, where he did not. IAF, Tab 6 at 43 of 53. Specifically, the agency relied on SOP 4005, which states

that Naval Security Forces (NSF) personnel "WILL NOT CONDUCT PURSUITS OFF THE INSTALLATION." *Id.* at 55 of 84 (capitalization in original). The deciding official explained that the appellant attended both Law Enforcement/Anti-Terrorism/Physical Security In-Service Training, wherein officers are instructed that NSF personnel do not have authority to arrest or detain civilians off the installation, and the Annual Sustainment Training, wherein officers are told that "[t]he enforcement of Criminal, or Civil Laws upon the civilian population beyond the jurisdiction of Commander Navy Region Southwest is strictly prohibited." *Id.* at 64, 71, 74 of 84; IAF, Tab 12 at 22. The appellant argues, in contrast, that his actions did not violate any agency policy and, even if they did, the agency is precluded from removing him for violating the policy where it failed to adequately train him or put him on notice of what conduct was prohibited. *See* PFR File, Tab 1 at 6-18.

¶9 Although SOP 4005 prohibits conducting pursuits "off the installation," it does not clearly preclude continuing a pursuit off-base that originated on-base in response to on-base unlawful activity. *See* IAF, Tab 6 at 55 of 84. Moreover, chapter 9, section 0901(c) of the Office of the Chief of Naval Operations (OPNAV) Instruction 5530.14E states:

> When engaged in pursuit driving, NSF personnel must use safe speed and always consider public safety. When a pursuit crosses into a jurisdiction where a[] [Memorandum of Understanding (MOU)] or Memorandum of Agreement (MOA)] exists, the concurrent agencies must be notified as soon as practical. When a pursuit crosses into a jurisdiction where no MOU or MOA exists, state and local laws regarding hot pursuit will be obeyed.[2]

*Id.* at 28 of 54; *see id.* at 7 of 68. Chapter 9, section 0901(c)(2) of OPNAV Instruction 5530.14E states, "If necessary and within local constraints, NSF patrols are permitted to use pursuit driving at safe speeds to apprehend motor

---

[2] On the date of the incident at issue in this appeal, no MOU or MOA existed between agency and local law enforcement. HT at 42.

vehicle operators who have committed traffic violations, minor offenses, or felonies not previously addressed." IAF, Tab 6 at 28 of 54; *see id.* at 7 of 68.

¶10      While the cited policies in effect at the time of the August 16, 2012 incident prohibit wholly off-base pursuits or other law enforcement activities, they plainly anticipate that officers will engage in off-base pursuit in response to on-base unlawful activity.[3]  Further, the appellant's witness, a supervisory police officer, testified that:  (1) he believed the appellant acted properly in following the vehicle off the base because his jurisdiction attached at the time he observed the traffic infraction that occurred on-base and was not erased simply because the vehicle exited the base; and (2) he, as a supervisory police officer, has made traffic stops outside of the base, has seen other officers do so, and has ordered his own subordinates to do so.  HT at 148-49.  The administrative judge cited no basis, nor does the record contain any reason, for not crediting this testimony.  Moreover, the proposing official acknowledged that, in his years as a police officer, he has seen officers issue magistrate citations off-base for infractions committed on-base.  HT at 28-29.  Taken as a whole, the agency has failed to prove the charge of failure to follow policy and procedure where the written policies are ambiguous and apparently contrary to actual practice.  Accordingly, we do not sustain the first charge.

The second charge of improper use of force is not sustained.

¶11      The Board must review the agency's decision in an adverse action solely on the grounds invoked by the agency, and may not substitute what it considers to be a more adequate or proper basis.  *George v. Department of the Army*, 104 M.S.P.R. 596, ¶ 7 (2007), *aff'd*, 263 F. App'x 889 (Fed. Cir. 2008).  If an

---

[3] Effective February 26, 2013 (about 6 months after the date of the incident in question), the agency issued SOP 4037, which provides that naval police officers may pursue a suspect off the installation only if he is suspected of committing one of seven specified felonies.  IAF, Tab 13 at 92.  It further provides that off-installation pursuits based on any other incident, such as misdemeanors or traffic violations, are not authorized at any time.  *Id.*

agency chooses to label an act of misconduct, it is bound to prove the elements that make up the legal definition of that charge. *Id.* In resolving the issue of how a charge should be construed, the structure and language in the proposal notice and the decision notice will be examined. *Id.* The nature of a charge should be construed in light of the accompanying specifications and circumstances. *Id.*

¶12    In the instant case, the agency charged the appellant with "improper use of force" and, based on the specification underlying the charge and accompanying discussion of the appellant's actions, it is clear that the agency action is premised on the belief that the appellant lacked jurisdictional authority over the driver at the time of the incident. *See* IAF, Tab 6 at 17-24, 43-45 of 53. The specification explicitly states that the appellant (and another naval base police officer) initiated "physical contact" with the driver "although [he was] outside the jurisdictional boundaries of Naval Base Coronado and had no legal basis to do so." *Id.* at 43 of 53. The decision notice further explains that the appellant's conduct "was in flagrant disregard . . . of the limits of [his] authority as a [Department of the Navy] Police Officer"; that he "knew or should have known [that he had] no law enforcement authority outside the boundaries of Naval Base Coronado"; and that he "pursued and physically confronted a citizen without authority and contrary to supervisory direction and operating procedures." *Id.* at 17-18 of 53. The *Douglas* factor penalty worksheet likewise contains language indicating that the agency charged the appellant with improper use of force because his use of force "resulted in the injury of a civilian in a jurisdiction in which [he] had no authority." *Id.* at 21-23 of 53.

¶13    We also recognize that the proposal and decision letters include some statements that, taken alone, could support the proposition that the agency did not charge the appellant with improper use of force only because he lacked jurisdictional authority at the time of the incident, but that his use of force was improper for some other reason. Specifically, the proposal and decision letters state that the appellant's physical confrontation with the driver was "not

justifiable"; that "the situation did not turn physical until [the appellant] and [the second officer] approached [the driver] and attempted to restrain him"; and that the appellant "did nothing to prevent the escalation [of the incident]." *Id.* at 17, 43 of 53. These statements, however, do not overcome the conclusion, based on the evidence discussed above, that the accompanying specification and circumstances in their entirety show that the agency charged the appellant with improper use of force *because* he lacked jurisdictional authority at the time he "initiated physical contact" with the driver. *Id.*

¶14    Only the charge and specifications set out in the proposal notice may be used to justify punishment because due process requires that an employee be given notice of the charges against him in sufficient detail to allow the employee to make an informed reply. *O'Keefe v. U.S. Postal Service*, 318 F.3d 1310, 1315 (Fed. Cir. 2002). Thus, because the agency charged the appellant with improper use of force and the specification explained that the action was premised on his lack of jurisdictional authority to use any force at the time of the physical altercation, the agency must prove, by preponderant evidence, that the appellant indeed lacked jurisdictional authority at that time.[4] *See id.*; *see also* IAF, Tab 6 at 17, 43 of 53. As discussed above, the agency failed to prove that the appellant violated any policy or procedure in effect at the time of the August 16, 2012 incident by exercising jurisdiction over the driver. For the same reasons, the agency also has failed to show, by preponderant evidence, that the appellant otherwise lacked jurisdictional authority over the civilian driver based upon the circumstances, policies, and accepted practices when the incident occurred.

---

[4] Consistent with this interpretation of the charge and specification, the appellant likewise considered the second charge to be premised on a purported lack of jurisdiction off of the base. In his response to the proposed removal, the appellant argued, "[t]he proposal does not state that the use of force was 'unreasonable,' 'excessive,' or otherwise in violation of the policies and procedures for use of force. Rather, the [charge] only states there was no 'legal basis' to use force." IAF, Tab 6 at 9 of 68.

Accordingly, we find that the agency has failed to meet its burden of proof, and we DO NOT SUSTAIN the second charge.[5]  Because we have not sustained either of the agency's two charges, we conclude that the agency's imposition of the removal penalty must be REVERSED.

## ORDER

¶15    We ORDER the agency to CANCEL the appellant's removal and to restore the appellant effective May 10, 2013.  *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶16    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act and/or Postal Service Regulations, as appropriate, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶17    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶18    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition

---

[5] The Board renders no opinion as to whether an excessive force or some other charge could have been sustained if the agency had brought such a charge.

should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶19    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the office that issued the initial decision on your appeal.

**NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS**

You have the right to request the United States Court of Appeals for the Federal Circuit to review this final decision. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right.  It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm.  Additional information is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the United States Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Merit Systems Protection Board neither endorses the services

provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:                                      _____
                                                    William D. Spencer
                                                    Clerk of the Board

Washington, D.C.



| | |
|---|---|
| | **DFAS CHECKLIST** |
| | **INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc., with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

   a. Outside earnings with copies of W2's or statement from employer.
   b. Statement that employee was ready, willing and able to work during the period.
   c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



## NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63)
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2.  Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3.  Outside earnings documentation statement from agency.

4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.

5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.