# United States Court of Appeals for the Federal Circuit

---

**WILLIAM COY,**
*Petitioner*

**v.**

**DEPARTMENT OF THE TREASURY,**
*Respondent*

---

2021-2098

---

Petition for review of the Merit Systems Protection Board in No. DC-0752-20-0325-I-1.

---

Decided: August 9, 2022

---

CHRISTOPHER HUGH BONK, Gilbert Employment Law, P.C., Silver Spring, MD, argued for petitioner. Also represented by KEVIN OWEN, ALEXIS NICOLE TSOTAKOS.

NATHANAEL YALE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by BRIAN M. BOYNTON, ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY.

---

Before DYK, REYNA, and STOLL, *Circuit Judges.*

DYK, *Circuit Judge.*

The Department of the Treasury ("Treasury") initiated a removal action against William Coy, charging Coy with "Misuse of Government Property." Treasury sustained the charge and removed Coy, and Coy appealed the removal to the Merit Systems Protection Board ("Board"). A Board Administrative Judge ("AJ") reversed Treasury's removal of Coy on the ground that Treasury violated his due process rights by considering information concerning Coy's work performance not included in the Notice of Proposed Removal. Treasury and Coy both petitioned the Board for review of the AJ's initial decision. While that petition for review was still pending, Treasury initiated a second removal action based on the same charge and specifications and subsequently removed Coy. Coy does not contend that the due process defect in the first removal action was present in the second removal action. An AJ upheld Treasury's second removal action, and the AJ's initial decision in the second action became the decision of the Board when no party petitioned the Board for review.

Coy petitions this court for review of the final decision in his second removal action, arguing both that Treasury was precluded from initiating the second action while the first was still pending and that the Board erred by considering grounds not listed in the Notice of Proposed Removal. We affirm.

BACKGROUND

I

On November 27, 2016, Coy began working at Treasury as the Director of Compensation and Benefits in the Office of the Comptroller of the Currency ("OCC"). Shortly thereafter, Coy filed an appeal with the Board requesting corrective action against Treasury under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), *see* 38 U.S.C. §§ 4301–35, alleging

discrimination in compensation. In connection with that action, Coy downloaded confidential employee data from two files within OCC electronic systems, which he accessed based on his status as the Director of Compensation and Benefits. The purpose apparently was to compare Coy's compensation with that of other employees. On March 16, 2017, Treasury took Coy's deposition in which he testified that he had accessed the two files and transferred them to his home computer to use in his USERRA action against Treasury. He produced the files to Treasury in response to a discovery request in the USERRA proceeding.

On September 20, 2017, Coy's supervisor proposed Coy's removal from federal service based on a single charge of "Misuse of Government Property" with three supporting specifications based on Coy's accessing and downloading the two files for personal use in his USERRA action in violation of various regulations. The Senior Deputy Comptroller for Management at Treasury sustained all three specifications and terminated Coy, effective April 13, 2018. On May 9, 2018, Coy appealed his removal to the Board.

On September 11, 2019, a Board AJ issued an Initial Decision in Coy's first appeal, reversing the removal. The AJ found that Coy demonstrated harmful procedural error and a due process violation because the deciding official at Treasury considered factors not referenced in Coy's Notice of Proposed Removal. However, the AJ stated that "[a]bsent the agency's due process and harmful procedural errors, [she] would have sustained the agency's charge and supporting specifications." J.A. 203. The AJ ordered Treasury to provide Coy with interim relief under 5 U.S.C. § 7701(b)(2)(A) if a petition for review was filed.

Both Treasury and Coy filed petitions for review with the full Board, and pursuant to the AJ's interim relief order, Treasury restored Coy to a non-duty employed status, effective September 11, 2019. Because the Board lacked a quorum until March 4, 2022, the petitions for review in

Coy's first appeal remained pending before the Board as of oral argument in this appeal.

## II

On October 28, 2019, Treasury again proposed Coy's removal based on the same charge and specifications as the previous removal. The charge and specifications were stated as follows:

Charge: Misuse of Government Property

Specification 1: On March 16, 2017, during a sworn deposition, you stated that you accessed and downloaded personnel data from an OCC system to include names, titles, band levels, series, salary information, social security numbers, birth dates, and service computation dates of approximately 94 employees in the OCC's Office of Human Capital. You accessed this information for your own personal use and without authorization.

Specification 2: On March 16, 2017, during a sworn deposition, you stated that you accessed and downloaded 80 pages of OCC new hire salary justification roll up information. You accessed this information for your own personal use and without authorization.

Specification 3: On March 16, 2017, during a sworn deposition, you stated that you emailed the information described in specifications 1 and 2 to your personal email account and stored the information on your personal computer at home. You were not authorized to remove OCC personnel information from the OCC, transmit the information outside OCC's networks, or store OCC personnel information on your home computer.

J.A. 162.

Treasury sustained the charge and terminated Coy a second time, effective December 28, 2019, and Coy appealed this second removal action to the Board on January 21, 2020. In the second removal action, Coy raised no claim of a due process violation related to consideration of materials outside the scope of the Notice of Proposed Removal, as was the case in the first removal.

A different Board AJ issued an Initial Decision in Coy's second appeal, affirming the removal and confirming that Treasury was permitted to initiate a second removal action while a petition for review of the first removal action remained pending. The AJ concluded "that the agency could initiate and effect a second removal action against [Coy] based on the same charges while a [petition for review] of the first removal action was pending" before the Board. J.A. 7. On the merits, the AJ sustained Specifications 1 and 2 in support of the misuse charge:

> In this case, it is undisputed that [Coy] collected sensitive electronic data containing personnel information concerning agency employees as well as outside candidates from the agency's websites to use that information to support his personal litigation efforts and then provided that information to agency attorneys during discovery. In addition to being unauthorized activity, [Coy's] actions constituted a serious violation of the agency's right to control and safeguard its property. Moreover, [Coy's] actions interfered with the agency's responsibility to ensure that such records are used only for the official government purposes for which they were created. In sum, [Coy's] conduct clearly constituted a misuse of government property.

J.A. 16–17. The AJ also sustained Specification 3 in support of the misuse charge.

The initial decision became final on May 20, 2021, when neither Treasury nor Coy filed a petition for review

with the Board.  Coy petitions this court for review.  We have jurisdiction under 28 U.S.C. § 1295(a)(9).

At oral argument, Coy argued that the interim relief statute, § 7701(b)(2), precluded the second removal action, an issue neither party briefed.  We ordered supplemental briefing on May 5, 2022, to address the following question:

> When the Board has issued an interim relief order pursuant to 5 U.S.C. § 7701(b)(2) ordering that the employee be restored to his position and paid back pay, does the order preclude the Agency from initiating a duplicate removal action and removing the employee while the interim relief order is in effect?

Order 3, ECF No. 32.  Both Coy and Treasury filed supplemental briefs.

## DISCUSSION

By statute, we are permitted to set aside a Board decision only if it is:

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

> (2) obtained without procedures required by law, rule, or regulation having been followed; or

> (3) unsupported by substantial evidence . . . .

5 U.S.C. § 7703(c).  "An agency's decision 'to dismiss a federal employee must have a "rational basis supported by substantial evidence from the record taken as a whole."'" *O'Keefe v. U.S. Postal Serv.*, 318 F.3d 1310, 1313 (Fed. Cir. 2002) (quoting *Mitchum v. Tenn. Valley Auth.,* 756 F.2d 82, 85 (Fed. Cir. 1985)).

## I

Coy contends that the interim relief statute in § 7701(b)(2) and the interim relief order here bar duplicate

removal actions while the first proceeding is still pending.[1] The interim relief statute provides,

> If an employee or applicant for employment is the prevailing party in an appeal under this subsection, the employee or applicant <u>shall be granted the relief provided</u> in the decision effective upon the making of the decision, and <u>remaining in effect pending the outcome of any petition for review under</u> subsection (e), unless—

> (i) the deciding official determines that the granting of such relief is not appropriate; or

> (ii)

>> (I) the relief granted in the decision provides that such employee or applicant shall return or be present at the place of employment during the period pending the outcome of any petition for review under subsection (e); and

>> (II) the employing agency . . . determines that the return or presence of such employee or applicant is unduly disruptive to the work environment.

§ 7701(b)(2)(A) (emphases added). The AJ's interim relief order stated, "The relief shall be effective as of the date of this decision and will remain in effect until the decision of the Board becomes final." J.A. 206; *see* Pet'r Suppl. Br. 5. Coy argues that, under the statute, interim relief "must remain in effect pending the outcome of any petition for review," and "[u]nless the agency proceeds with an adverse action taken on grounds other than those on which the

---

[1]    Coy admits that the second removal action would be proper if the first removal action had been finally set aside on procedural grounds. *See generally Reynolds v. United States*, 454 F.2d 1368, 1374 (Ct. Cl. 1972).

interim relief order was based, a repeat adverse action is inconsistent with the interim relief order under 5 U.S.C. § 7701(b)(2)." Pet'r Suppl. Br. 1, 3. We think the interim relief statute does not support Coy's argument.

Our court has rejected an interpretation of the interim relief statute that would bar all subsequent disciplinary actions until a decision is final. In *Guillebeau v. Department of the Navy*, the Navy removed an employee for poor work performance, and an AJ reversed the decision, ordering interim relief. 362 F.3d 1329, 1331 (Fed. Cir. 2004). The Navy petitioned the Board for review and returned the employee to pay status, but after a short period and while the petition for review was still pending with the Board, the Navy indefinitely suspended the employee because the employee's security clearance was suspended. *Id.* In that case, the initial removal action was based on work performance, and the subsequent suspension was based on the suspension of a security clearance. *Id.* at 1333. We held that the interim relief order and statute did not constitute an absolute bar on subsequent actions:

> [T]he interim relief order can[not] insulate an appellant from a subsequent adverse action *so long as that action is not inconsistent with the initial decision.*" *Barcliff v. Dep't of the Navy,* 62 M.S.P.R. 428, 433 (1994) (emphasis added); *see also Rothwell v. United States Postal Serv.,* 68 M.S.P.R. 466, 468 (1995); *Shumate v. Dep't of the Navy,* 62 M.S.P.R. 288, 290 (1994); *Crespo v. United States Postal Serv.,* 53 M.S.P.R. 125, 129 (1992). In these cases, the Board held that the interim relief order only protects the appellant from adverse actions based on the events underlying the action in which the interim relief order was granted, not events that are unrelated to the interim relief order.

*Id.*

Although *Guillebeau* involved a situation where the underlying employee conduct was different in the two cases, we think the principle of *Guillebeau* applies equally to situations where the conduct is the same, but the grounds of Board's decisions are different, i.e., where the Board's decision in the second action "is not inconsistent with the initial decision"—for example, where the first action is set aside for a procedural deficiency not present in the second proceeding.  *Id.*

The legislative history, though limited, confirms the narrow scope of the provision and that it was designed to prevent an employee from being denied the benefits of a Board decision, pending appeal, by an agency's interim action inconsistent with a first decision.  The interim relief statute was added as part of the Whistleblower Protection Act of 1989.  Pub L. No. 101-12, § 6, 103 Stat. 16, 33–34 (1989).  The Senate Report explained, "This section is a change to current law in that under current law, employees are not granted any relief ordered by a regional office of the Board until they win at the full Board."  S. Rep. No. 100-413, at 35 (1988).  Senator Pryor provided some clarification on this purpose: "[The Senate bill] provides interim relief to those whistleblowers who receive a favorable decision at the . . . MSPB, regional level.  This ensures that an employee will not suffer undue hardship waiting for a final decision from the MSPB."  134 Cong. Rec. 29,543 (1988) (statement of Sen. Pryor).  Thus, the statute was designed to preserve the consequence of a "favorable decision," not to preserve the employee's employment rights regardless of the circumstances.

Board precedent, while not binding on this court, also appears to allow duplicate removal actions that cure procedural deficiencies in a first removal action even while the final action is still pending before the Board.  Although Coy quotes language in *Hanner v. Department of the Army*, 62 M.S.P.R. 677, 687 (1994), that appears to support his argument that the first action must be final before the second

action can be initiated,[2] *Hanner* did not directly address a situation where the second action was initiated when the first action suffered from a procedural error that could be cured in the second action.[3]  Other Board cases more directly on point support our conclusion that a second action is not precluded even if it is initiated while a first action is on appeal when the first action has been set aside for a procedural violation.  *Barcliff v. Dep't of the Navy*, 62 M.S.P.R. 428, 431–33 (1994); *Shumate v. Dep't of the Navy*, 62 M.S.P.R. 288, 290 (1994).

In view of the statutory language, our decision in *Guillebeau*, and the legislative history, the clear purpose of the statute is to prevent the agency from taking action inconsistent with the first decision.  That did not occur here.  The first removal suffered from a procedural deficiency that was cured in a second removal action.  Thus, Coy's second removal was permissible while the first removal was still pending before the Board because the second removal cured the procedural deficiency of the first removal and did not evade the first decision.

---

[2]    *See Hanner*, 62 M.S.P.R. at 687 ("[I]n a case involving two consecutive removals, the second removal can have no force or effect unless the agency rescinds or modifies the first removal action, or a final decision of the Board or a court reverses the first removal action.").

[3]    Coy also relies on *Parker v. U.S. Postal Service*, 46 M.S.P.R. 214, 219–20 (1990).  The Board in *Parker* appears to have held that an employee who has been removed cannot be removed again until restored to his prior position.  *Id.* at 219–20.  To the extent that language in *Hanner* or *Parker* supports a view contrary to our holding here, it is not binding on this court, and we disapprove of it.

## II

We next consider whether the Board abused its discretion by considering Coy's transmittal of the sensitive electronic data to non-OCC counsel while analyzing Specifications 1 and 2 of the Notice of Proposed Removal when those specifications mention "personal use" but not transmittal.  We have held it is an abuse of discretion to exceed the scope of the charge and specifications listed in a Notice of Proposed Removal.  *O'Keefe*, 318 F.3d at 1315.  "Only the charge and specifications set out in the Notice may be used to justify punishment because due process requires that an employee be given notice of the charges against him in sufficient detail to allow the employee to make an informed reply."  *Id.*; *see also Do v. Dep't of Hous. & Urb. Dev.*, 913 F.3d 1089, 1094 (Fed. Cir. 2019) ("[W]hen an agency disciplines an employee, it may do so based only on the charges in the notice of proposed action, and the Board, in turn, can affirm the disciplinary action based only on the charges actually noticed and relied on by the agency.").

Coy argues that Specifications 1 and 2 do not allege transmittal of information and that the Board's "review of these specifications relies upon a finding that Mr. Coy improperly transmitted government data." Pet'r Br. 24.  We reject Coy's argument because the Board properly concluded that the transmittal was part of Coy's "access[ing] th[e] information for [his] own personal use and without authorization," as recited in Specifications 1 and 2.  J.A. 162.  The Board found that Coy "downloaded agency information which he was authorized to obtain for performing his job duties but <u>he utilized that information for his own personal purposes in litigation including providing the information to non-OCC agency counsel without authorization</u>." J.A. 16 (emphasis added).

Coy argued that providing the relevant data to non-OCC counsel in discovery was not for personal use, and

now argues that the Board erred in concluding that transmitting was part of Coy's personal use. We see no error in concluding that Coy's use of confidential employee information here, including the transmission to government counsel, was a personal use. Coy could not have used the data in the USERRA proceeding without providing it to counsel in response to the discovery requests for "each and every fact upon which you base your claim in this matter that the OCC set your salary as a means to discriminate against you," J.A. 108, and "each and every document, electronic recording, or other tangible item, however described, which in any way reflects, relates to, substantiates, or corroborates the allegations of discrimination contained in your appeal," J.A. 108–09. Providing the documents in response to those requests was therefore part of the personal use.

## CONCLUSION

The interim relief statute does not preclude a second removal action while a first removal action is still pending when the second action cures a procedural deficiency in the first action. The Board properly considered how Coy used the sensitive data that he accessed and downloaded in determining if Coy's use was an unauthorized personal use.

## **AFFIRMED**

### COSTS

No costs.