Ardith M. HORNE, et al., Petitioners,

v.

**MERIT SYSTEMS PROTECTION BOARD and Interstate Commerce Commission, Respondents.**

**No. 81–1457.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 16, 1982.

Decided August 3, 1982.

**156**

William A. Dobrovir, Washington, D. C., with whom Joseph D. Gebhardt and Fred C. Zacharias, Washington, D. C., were on the brief, for petitioners.

Michael J. Ryan, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time the brief was filed, Royce C. Lamberth and Kenneth M. Raisler, Asst. U. S. Attys., Washington, D. C., were on the brief, for respondents. Jane M. Edmisten, Atty., Merit Systems Protection Bd., Washington, D. C., entered an appearance for respondent Merit Systems Protection Bd.

Before BAZELON, Senior Circuit Judge, MIKVA and GINSBURG, Circuit Judges.

Opinion for the Court filed by Senior Circuit Judge BAZELON.

1. ICC Commissioner Brown selected Horne as an attorney-advisor in 1967. Commissioner Murphy selected Miller as an attorney-advisor in 1973. When Commissioner Murphy retired in 1978, ICC Chairman O'Neal selected Miller as one of his attorney-advisors. Attorney-advisors directly assist the commissioners in their work, particularly in the decision of cases and preparation of opinions.

2. Described briefly, a RIF works as follows: When a "reorganization," "lack of work," budget cutback or the like requires the release of some personnel, an agency must announce

BAZELON, Senior Circuit Judge:

Petitioners bring this action pursuant to 5 U.S.C. § 7703, seeking judicial review of a final order of the Merit Systems Protection Board ("the Board"). That order upheld action by the Interstate Commerce Commission ("the ICC") demoting petitioners Horne and Miller in salary and rank. We find that the ICC followed improper procedures in its treatment of petitioners, and that the Board erred in affirming the ICC action. We therefore vacate the decision of the Board and remand the case to the ICC for disposition pursuant to proper procedures.

## I. BACKGROUND

The essential facts in this case are uncontroverted. Petitioners Ardith Horne and Wayne Miller are career ICC attorneys with 25 and 12 years service, respectively. Both have served for several years as attorney-advisors to agency commissioners of both political parties.[1] In the course of their employment with the ICC, both Horne and Miller attained GS–15 positions.

The Commissioners for whom petitioners worked both left the ICC in 1979. The new commissioners chose persons other than Horne and Miller as attorney-advisors. On January 22, 1980, new ICC Chairman Gaskins demoted and reassigned Horne and Miller from their GS–15 employment to lesser GS–14 positions. He apparently considered petitioners to be political employees and believed that the demotions were not part of a "Reduction in Force" ("RIF") requiring formal RIF procedures.[2] During

that fact together with a RIF plan. Pursuant to the plan, an administrative area must be designated from which a certain number of employees will be released and within which the employees will compete to be retained. Retention is determined according to a variety of factors including veteran's preference and seniority. The "competition" is conducted through a "retention register" on which employees are listed according to their "competitive level" (which defines comparability), seniority, and so forth. Once the individuals who are to be released are identified, "reassignment" rights come into play. These rights permit certain individuals

the few months following the demotions, the Chairman brought at least nineteen attorneys from outside the ICC into GS–15 positions.

On appeal to the Board, petitioners claimed, *inter alia*, that the agency had effected a *de facto* RIF without according them the procedural and substantive protections guaranteed by RIF regulations. The presiding official concluded that the ICC had indeed undertaken a *de facto* RIF, and she held a hearing to determine whether petitioners had received the rights due them under RIF procedures. She concluded that if the ICC had conducted a formal RIF, the agency *could have* defined the relevant "competitive area" (the area in which employees compete to be retained during a RIF) as the offices of the departing Commissioners. Under this definition, Horne and Miller had no competitive area after their Commissioners had departed, so petitioners could have been released, furloughed, or demoted. Accordingly, the presiding official concluded that the ICC's failure to conduct a formal RIF had not injured petitioners.

Notwithstanding these conclusions, the presiding official found some aspects of the ICC action "inherently inequitable." This finding centered on the fact that numerous GS–15 vacancies were available in the same bureau in which the petitioners were placed at GS–14 rank. Although she recognized that petitioners had no regulatory right to vacant GS–15 positions, she nevertheless found this action unfair. She ordered the agency to restore them to GS–15 grades and salaries for two years pursuant to RIF requirements, after which period they will revert to GS–14. 5 U.S.C. §§ 5362–63. The full Board affirmed this decision, adding that the ICC's actions were based on legitimate management concerns and taken in good faith. In this appeal, petitioners

under certain circumstances to "bump" (displace) others or to "retreat" to previous jobs. The intricacies of the procedure are remarkable, too remarkable to describe here in detail. 5 C.F.R. § 351 (1982); *see generally* Note, *Reduction in Force: A Guide for the Uninitiated*, 44 Geo.Wash.L.Rev. 642 (1976).

seek permanent restoration of their GS–15 status.

## II. Discussion

The Board upheld the ICC action based on the agency's contention that a proper RIF *could have* achieved the same result as was achieved in this case. The central issue in this case is whether the Board could properly accept this rationale as justification for the ICC action.

In *SEC v. Chenery*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court set forth a "simple but fundamental rule of administrative law." *Id.* at 196, 67 S.Ct. at 1577.

That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action *solely by the grounds invoked by the agency.* If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.

*Id.* (emphasis added). The rationale of this rule is clear. "If an order is valid only as a determination of policy or judgment which the agency alone is authorized to make and which it has not made, a judicial judgment cannot be made to do service for an administrative judgment.... [A]n appellate court cannot intrude upon the domain which Congress has exclusively entrusted to an administrative agency." [3] The same rationale applies when the reviewing body is an administrative tribunal rather than a court. Simply put, the Board should not be in the business of affirming administrative decisions based upon how an agency might have acted if it had followed proper proce-

3. *Securities and Exchange Commission v. Chenery Corp.*, 318 U.S. 80 at 87, 63 S.Ct. 454 at 459, 87 L.Ed. 626 (1947).

dures. The role of review is to evaluate agency discretion as it has been exercised.[4]

In the instant case, the ICC had substantial discretion to decide when to invoke a RIF and how to define a competitive area. When clearly exercised, such discretion and expertise should receive deference in review by the Board and the courts. In this case, however, the ICC never exercised its discretion. The Board adopted the *de facto* RIF rationale after the fact, so there was nothing to which the Board could properly have deferred. The only clearly exercised act of discretion by the agency was its decision not to conduct a formal RIF—a decision that the Board found to be an error. When the Board decided that the demotions required a RIF, the Board should have remanded the case for disposition pursuant to proper procedures.

A remand would be unnecessary if petitioners had no job tenure rights. If petitioners held their jobs entirely at the pleasure of someone at the ICC, their rights would not be compromised by that individual's failure to follow proper procedures in demoting them. As employees in the "excepted" service, it is true that petitioners lacked most of the procedural protections and tenure rights of employees in the "competitive" service.[5] That does not mean, however, that petitioners were utterly without rights. Prior practice or the rules of a particular agency may confer tenure status cognizable as "property" under the Due Process clause.[6] More importantly, an excepted employee is not the same as a political employee. In *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), and *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1975), the Supreme Court held that "a nonpolicymaking, nonconfidential government employee can[not] be discharged ... from a job that he is satisfactorily performing upon the sole ground of his political beliefs" even if he has no state-conferred tenure. 427 U.S. at 375, 96 S.Ct. at 2690. *See also Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Civil service regulations suggest that petitioners in this case are not political employees.[7] Thus, the First Amendment may protect them against some actions by their employer.

In addition, an excepted employee has RIF rights, which are largely determined by the size of his or her competitive area.[8] An agency has significant discretion in defining the competitive area of an employee in a RIF, but that discretion clearly has limits. A competitive area may not be

---

4. The rule established in *Chenery* only applies to agency actions that involve policymaking or other acts of agency discretion. It would obviously be wasteful to send a decision back to an agency for further action if facts already established make such further action by the agency predetermined. In such a situation, a court is competent to review action that the agency has not taken, but which the agency would have to take if the court remanded the case prior to review. *See Local 833 UAW v. NLRB*, 300 F.2d 699, 705 (D.C.Cir.), *cert. denied*, 370 U.S. 911, 82 S.Ct. 1258, 8 L.Ed.2d 405 (1962); *Chae-Sik Lee v. Kennedy*, 294 F.2d 231 (D.C.Cir. 1961).

5. *See Fiorentino v. United States*, 607 F.2d 963, 966 (Ct.Cl.1979).

6. *See, e.g., Paige v. Harris*, 584 F.2d 178 (7th Cir. 1978) (HUD manual confers tenure rights on staff attorneys that cannot be deprived without appropriate procedures).

7. *Branti* and *Elrod* suggest that whether a given position is "nonpolicymaking and nonconfidential" depends on the facts of each case.

Civil service regulations explicitly distinguish political from nonpolitical employees in the excepted service using language very similar to that of *Branti* and *Elrod*. "Schedule A" includes "[p]ositions other than those of a confidential or policy-determining character" while "Schedule C" includes "[p]ositions of a confidential or policy-determining character." 5 C.F.R. § 6.2. Attorneys, like petitioners here, are listed under Schedule A, suggesting that they are not political employees.

8. As this court recently noted, the rights of an excepted employee in a RIF area are inferior to those of competitive employees. *See Shirey v. Devine*, 670 F.2d 1188 at 1190 & n.5 (D.C.Cir. 1982). Most significantly, excepted employees lack reassignment rights and can only compete for retention with other excepted employees. They do, however, have retention rights. 5 C.F.R. § 351.502. Accordingly, the fate of an excepted employee during a RIF depends critically on the size of his or her competitive area, as illustrated by the instant case.

drawn so narrowly as to be virtually meaningless.[9] Moreover, a RIF cannot be used to disguise an individual personnel action. *Fitzgerald v. Hampton*, 467 F.2d 755, 758 (D.C.Cir.1972). For that reason, the courts, as well as the Board, have previously insisted that agencies bear the burden of proving that a RIF was justified and that proper procedures were followed. 5 U.S.C. § 7701(c)(1)(B). *See Losure v. ICC*, 2 MSPB 361, 365–6 (1980).

Hence, petitioners in this case had several rights that require protection through proper RIF procedures. In reviewing the ICC's action, the Board and this court must determine whether the agency deprived petitioners of those rights. But neither the Board nor this court can properly evaluate the agency's discretionary acts in conducting a RIF until that discretion has been clearly exercised. "[A] court [cannot] be expected to chisel that which must be precise from what the agency has left vague and indecisive."[10] This rule is particularly applicable to this case where first amendment concerns are potentially involved. The petitioners should be demoted for valid reasons, or not at all. *See Mt. Healthy Board of Educ. v. Doyle*, 429 U.S. 274, 279, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977).

The Board's decision is therefore vacated, and the case remanded to the ICC for further proceedings in accordance with this opinion.

*So ordered.*

9. *See* Note, *supra* note 2 at 648–53.

10. *SEC v. Chenery*, 332 U.S. 194, 197, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947).