NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MIRANDA GOLDENBERG, AS PERSONAL REPRESENTATIVE FOR MICHELLE DAVIDSON,**
*Petitioner*

**v.**

**FEDERAL BUREAU OF PRISONS,**
*Respondent*

---

2020-1361

---

Petition for review of an arbitrator's decision in No. 19114-03260 by Richard A. Beens.

---

Decided:  August 16, 2021

---

RUSHAB SANGHVI, Office of General Counsel, American Federation of Government Employees, Washington, DC, for petitioner.  Also represented by ANDRES MYLES GRAJALES.

WILLIAM JAMES GRIMALDI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by JEFFREY B. CLARK, TARA K. HOGAN, ROBERT EDWARD KIRSCHMAN, JR.

————————————

Before LOURIE, SCHALL, and DYK, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Petitioner Miranda Goldenberg, as personal representative for Michelle Davidson, seeks review of an arbitrator's decision sustaining Davidson's removal from employment as a nurse with the Bureau of Prisons ("BOP"), arguing that the deciding official violated Davidson's due process rights by considering new and material information without notice to Davidson. *See Federal Bureau of Prisons v. Am. Fed'n of Gov't Emps., Local 1612*, No. 19114-03260 (Nov. 22, 2019) (Beens, Arb.). Because the record does not establish that the deciding official considered the information as an aggravating factor in determining the penalty, we *affirm.*

## BACKGROUND

BOP operates seven United States Federal Prison Medical Centers throughout the country. Davidson was employed as a nurse in one such facility in Springfield, Missouri for over 22 years, at one point rising to the position of Assistant Director of Nursing. For approximately two years prior to her removal, Davidson was one of two certified chemotherapy nurses at the facility.

The conduct at issue in this appeal arose from a series of events in early 2018. On January 25, Davidson's personal physician prescribed Suboxone®, a treatment for opioid or alcohol dependence, with instructions to take the medication six times a day. Davidson took a first dose that night. The following morning, Davidson took a second dose prior to arriving at work and a third dose shortly after arriving. During her shift, Davidson's coworkers reported signs of impaired behavior, including slurred speech. Following breath and urine tests, Davidson was excused from the remainder of her shift and taken home.

A second incident occurred a week later when two coworkers observed Davidson arrive to work and remove from one of her personal bags a hazard bag containing chemotherapy waste. The relevant procedures pertaining to disposal of chemotherapy waste instruct nurses to "[p]lace disposable material used in the administration of Chemotherapy into a plastic zip-locked bag labeled chemotherapy then place in yellow trash container clearly labeled Chemotherapy waste . . . ." Davidson told the coworkers that she had been extremely busy the day before working in the chemotherapy building and had not felt like walking all the way to the appropriate building to throw away the waste before going home. Davidson later disposed of the waste in the appropriate bin after returning to work.

BOP investigated Davidson's conduct, and on November 1, 2018, notified Davidson that it proposed to remove her from her position based on two violations of the BOP Standards of Employee Conduct: (1) Failure to Follow Policy for the improper disposal of chemotherapy waste, and (2) Reporting for Duty Under the Influence of Suboxone. J.A. 281. The letter noted that BOP considered that Davidson had been suspended previously for 21 days in 2017 for failure to follow policy, and the proposing official "ask[ed] the deciding official to consider this prior discipline in making the decision" on the proposed removal. J.A. 283. On November 14, 2018, Davidson met with Warden Smith, the deciding official, to discuss the charges. Davidson asked Smith to take into consideration, among other things, her years of service and work history, and Smith responded that he would review the applicable *Douglas* factors for determining an appropriate penalty in making his decision. J.A. 286; *see also Douglas v. Veterans Admin.*, 5 M.S.P.B. 313 (1981).

On January 2, 2019, Smith informed Davidson of his decision to remove her from service. J.A. 290. Smith found that the charges were supported by the evidence and that Davidson's conduct "could have had serious consequences

for the safety of everyone at the institution." J.A. 289. Regarding the appropriate penalty, Smith considered Davidson's prior 21-day suspension and concluded that Davidson's "misconduct is so serious as to warrant a substantial penalty." J.A. 290. Smith also noted that removal "is consistent with sanctions imposed on others for substantially similar conduct." *Id.* Sometime between the conduct at issue in this appeal and Smith's decision, Davidson was demoted based on a separate disciplinary action, but Smith did not address the demotion in his removal decision. *See* Appellee's Br. 34 n.8.

Pursuant to her rights under a collective bargaining agreement, the American Federation of Government Employees appealed Davidson's removal to an arbitrator. The arbitrator held a hearing at which Smith testified. On direct examination, Smith was asked about his consideration of Davidson's prior 21-day suspension in his removal decision. Smith responded that he contemplated disciplines other than removal, including "another demotion." J.A. 183. On cross-examination, Smith was asked about the role of Davidson's prior demotion in his removal decision and responded that, because previous discipline had not "changed [Davidson's] behavior," Smith "could not get past . . . that Ms. Davidson was safe to bring . . . back inside the facility in any capacity." J.A 199.

The arbitrator sustained Davidson's removal. The arbitrator found Smith's testimony credible and that Smith "appropriately reviewed the *Douglas* factors" in making his decision. J.A. 16. Ultimately, the arbitrator concluded that the evidence supported both charges and that there was a reasonable relationship between Davidson's misconduct and the penalty of removal. J.A. 15. The arbitrator did not specifically address Smith's testimony regarding Davidson's prior demotion.

Davidson appealed but passed away after briefing was completed. We granted Goldenberg's motion to substitute

her as petitioner in this case as Davidson's personal representative. We have jurisdiction under 5 U.S.C. §§ 7121(f) and 7703(b)(1).

## DISCUSSION

We review "the award of an arbitrator in the same manner and under the same conditions as if the matter had been decided by the [Merit Systems Protection] Board." 5 U.S.C. § 7121(f). We must set aside a decision of the Board if it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *Id.* § 7703(c). Accordingly, we "must reverse a decision of the Board if its decision [was] not in accordance with the requirements of the Due Process Clause of the Fifth Amendment or any other constitutional provision." *Blank v. Dep't of the Army*, 247 F.3d 1225, 1228 (Fed. Cir. 2001) (citing *Khan v. United States*, 201 F.3d 1375, 1382 (Fed. Cir. 2000)). "We review the Board's legal conclusions de novo and its fact findings for substantial evidence." *Smith v. Gen. Servs. Admin.*, 930 F.3d 1359, 1364 (Fed. Cir. 2019) (citing *Campbell v. Merit Sys. Prot. Bd.*, 27 F.3d 1560, 1564 (Fed. Cir. 1994)).

On appeal, Goldenberg argues that Smith violated Davidson's due process rights by relying on Davidson's prior demotion as an aggravating factor in his removal decision without providing prior notice to Davidson that the demotion would be considered and an opportunity to respond. At a minimum, because the arbitrator failed to address the issue in his decision, Goldenberg argues that the arbitrator's decision should be vacated and remanded for a determination whether Smith's consideration of the prior demotion was a violation of due process in the first instance.

The government responds that no due process violation occurred because Smith did not rely on the demotion as an

aggravating factor for an enhanced penalty. According to the government, Smith's testimony establishes that the safety of the institution was the motivating factor in his removal decision, and a mere reference to Davidson's prior demotion does not create a due process violation. But even if the demotion was considered in the removal decision, the government argues that the arbitrator's decision should be affirmed because Goldenberg has not demonstrated that the information was new and material.

We agree with the government that Smith's testimony establishes that he did not rely on Davidson's prior demotion as an aggravating factor in his removal decision, and therefore his reference to the demotion was not a violation of due process. "Procedural due process guarantees are not met if [an] employee has notice only of certain charges or portions of the evidence and the deciding official considers new and material information." *Stone v. FDIC*, 179 F.3d 1368, 1376 (Fed. Cir. 1999). This extends to aggravating factors supporting an enhanced penalty. *See Ward v. U.S. Postal Serv.*, 634 F.3d 1274, 1280 (Fed. Cir. 2011). Here, Goldenberg urges that Smith relied on Davidson's prior demotion as an aggravating factor supporting his removal decision without any previous notice. Specifically, Goldenberg argues that the demotion was the "decisive factor" in removing Davidson and thus necessarily material to the decision. Appellant's Br. 13.

Goldenberg overstates Smith's testimony. Smith's initial reference to "another demotion" was in reference to his consideration of "other disciplines"—that is, disciplines other than removal—as required by the *Douglas* factors. J.A. 183; *see also Douglas*, 5 M.S.P.B. at 332. Read in context, it is evident that Smith simply acknowledged that he considered demotion as an alternative penalty to removal generally, not Davidson's prior demotion specifically. His reference to "another" demotion indicates only that he was aware that Davidson had been demoted previously, not that he relied on the prior demotion as an aggravating

factor in the current discipline. "A deciding official's knowledge of an employee's background only raises due process or procedural concerns where that knowledge is a basis for the deciding official's determinations on either the merits of the underlying charge or the penalty to be imposed." *Norris v. Sec. and Exch. Comm'n*, 675 F.3d 1349, 1353 (Fed. Cir. 2012). Here, we agree with the government that Smith's reference to Davidson's demotion was largely "mere knowledge" of her background and was not relied upon as an aggravating factor for the penalty imposed. *Id.*

To be sure, the deciding official relied on the previous demotion in concluding that another demotion would be ineffective. But it is also apparent from Smith's testimony that it was the safety of the institution's inmates and employees, rather than the ineffectiveness of prior discipline to change Davidson's conduct, that led him to conclude that removal was necessary. At the oral hearing, Smith testified that, although he "seriously" considered another demotion, "it was just not safe to put [Davidson] back in the institution. So [he] felt like [he] had no other choice than termination." J.A. 184. When pressed on cross-examination whether he considered the prior demotion in determining the penalty in the instant matter, Smith again reiterated that he considered it only as it pertains to whether it was "safe to bring her back to work" and whether the discipline is "going to be effective and [Davidson] no longer have issues with misconduct." J.A. 199. Rather than considering that the prior demotion was ineffective in changing Davidson's behavior as an aggravating factor warranting an increased penalty, Smith's testimony focused on the prospective effectiveness of discipline in the current matter to ensure a safe work environment. Thus, Smith did not determine that an increased penalty was warranted because the prior discipline was ineffective, but because, based on the seriousness of the conduct at issue in this discipline and the uniquely demanding work

environment, a demotion would be ineffective to ensure the safety of the institution.

The failure to notify Davidson of the limited use of the prior demotion in the course of the proceedings before the agency was not in and of itself sufficiently serious to amount to a due process violation, particularly since Davidson made no effort on appeal to demonstrate how such knowledge would have enabled her to better argue against the penalty of removal. *See Do v. Dep't of Hous. and Urb. Dev.*, 913 F.3d 1089, 1097 (Fed. Cir. 2019) (failures to notify do not violate due process if the procedural errors were minor). Accordingly, we agree with the government that the record does not demonstrate that Smith relied on the prior demotion as an aggravating factor, and thus there was no violation of Davidson's due process rights.

## CONCLUSION

We have considered Goldenberg's remaining arguments but find them unpersuasive. For the foregoing reasons, the arbitrator's decision is *affirmed*.

## AFFIRMED

### COSTS

No costs.