NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LECOLA MUNGO, JR.,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

---

2022-1266

---

Petition for review of an arbitrator's decision in No. 21103-01030 by Dennis Nolan.

---

Decided:  April 4, 2023

---

STEPHAN B. CALDWELL, Suwanee, GA, for petitioner.

KRISTIN ELAINE OLSON, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY.

---

Before DYK, MAYER, and REYNA, *Circuit Judges*.

PER CURIAM.

Lecola Mungo, Jr., petitions for review of an arbitrator's decision upholding his removal from his position as a security guard.  For the reasons discussed below, we affirm.

BACKGROUND

Mungo was employed as a Department of the Army Security Guard ("DASG") at Gillem Enclave, an installation which houses several military units.  J.A. 15, 136–37.  On May 8, 2020, Mungo was involved in a heated dispute with another DASG, Gerald Thompson, related to food placed in the office refrigerator.  J.A. 15.  Mungo acknowledged before the arbitrator that during this altercation he told Thompson that he would "[expletive] him up."  J.A. 15 (citation and internal quotation marks omitted).

Immediately after the dispute with Thompson, Mungo called Captain Danny Taylor, one of his supervisors.  J.A. 16.  Taylor testified that Mungo was very emotional and repeatedly threatened to kill Thompson.  J.A. 16, 46, 275.  Mungo then called another supervisor, Captain Jeffrey Butler.  J.A. 16, 281.  Butler testified that Mungo repeatedly threatened Thompson, saying that he "wanted to hurt him bad."  J.A. 282.  Butler thereafter told Mungo to put his weapon in the safe and to leave work immediately.  J.A. 16, 281–22.

Both Butler and Taylor called Gregory Whittington, the Chief of Guards for Gillem Enclave, and reported their conversations with Mungo.  J.A. 216–17.  Taylor subsequently issued a letter of warning to Mungo, J.A. 46–47, and held a counseling session with him, J.A. 49–50.

As a DASG, Mungo was required to maintain a certification pursuant to the Army's Individual Reliability Program ("IRP"), a security program designed to ensure that all security guards are fit for duty and that their characters and trustworthiness comport with the high standards expected of law enforcement personnel. J.A. 17, 31–34. Following an investigation in which he gathered statements

from Butler, Taylor, and Thompson, Whittington informed Mungo that he was being temporarily suspended from the IRP. J.A. 71–72, 217, 266. Additionally, Whittington referred Mungo for a medical fitness for duty examination, which he passed. J.A. 52–53, 72, 217.

In July 2020, Whittington informed Mungo that he was permanently decertified from the IRP based on the May 8, 2020, incident, and that this IRP decertification could be cause for removal from federal employment. J.A. 13. Mungo submitted a timely written rebuttal to his permanent suspension from the IRP. *See* J.A. 71–72. Whittington subsequently proposed Mungo's removal from the federal service on charges of: (1) "conduct unbecoming a federal employee–unprofessional behavior," based upon Mungo's conduct on May 8, 2020; and (2) "failure to maintain a condition of employment," based upon Mungo's decertification from the IRP. J.A. 1–2, 6–7. Whittington provided Mungo with the materials upon which the notice of proposed removal was predicated and informed him of his right to respond to the notice. J.A. 3–4.

Through his union, Mungo responded to the notice of proposed removal, arguing that the charges against him did not warrant removal or decertification from the IRP. J.A. 54–58. After the Army removed Mungo from his position, he invoked arbitration. J.A. 14. The arbitrator determined that the Army had "demonstrated by a preponderance of the evidence that [Mungo] engaged in conduct unbecoming a federal employee by threatening to '[expletive] up,' to kill, and to hurt DASG Thompson." J.A. 21. Turning to the second charge against Mungo, failure to maintain a condition of employment, the arbitrator found that Mungo's position required IRP certification and that the agency had a reasonable basis for revoking that certification. J.A. 19, 21–22. Furthermore, although the union challenged Mungo's decertification by arguing that Whittington lacked the proper delegated authority to make the decertification decision, the arbitrator held that Mungo's

decertification "was procedurally proper," J.A. 22, and that "there was no due process violation in Chief Whittington's making the decision to revoke [Mungo's] certification," J.A. 18–19.

The arbitrator stated, moreover, that "[e]ven if there were a technical error" related to the decertification, "the error did not harm" Mungo. J.A. 19. In upholding Mungo's removal, the arbitrator concluded that the Army "had just cause to remove [him] for threatening a co-worker" and that "[r]emoving him would promote the efficiency of the service by ending a possible workplace threat and by deterring [other] employees from similar conduct." J.A. 24.

Mungo then appealed to this court. We have jurisdiction under 5 U.S.C. §§ 7121(f) and 7703(b)(1)(A).

## DISCUSSION

A federal employee who wishes to challenge an adverse action may generally appeal to the Merit Systems Protection Board ("board") or, in the alternative, bring a claim before an arbitrator under a negotiated grievance procedure created through collective bargaining. *See id.* § 7121(e)(1); *Buffkin v. Dep't of Def.*, 957 F.3d 1327, 1329 (Fed. Cir. 2020). This court reviews an arbitrator's decision under the same standard of review that we apply to decisions from the board. *See Johnson v. Dep't of Air Force*, 50 F.4th 110, 114 (Fed. Cir. 2022). We thus must affirm an arbitrator's decision unless it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see Johnson v. Dep't of Veterans Aff's*, 625 F.3d 1373, 1376 (Fed. Cir. 2010).

On appeal, Mungo argues that the arbitrator's decision was "not in accordance with the law" because it "excused the [Army] from having to prove the underlying merits of [his] permanent [IRP] decertification." Br. of Pet'r 6. We

disagree.  Before the arbitrator, the Army properly established the bases for its decision to permanently revoke Mungo's IRP certification.  *See* J.A. 15–18.  Both Taylor and Butler testified that Mungo had repeatedly threatened to hurt or kill Thompson.  J.A. 16–17, 275–76, 281–82. Whittington testified, moreover, that after an investigation, J.A. 217, 243, he decided to decertify Mungo because security guards are held to a "high standard" and "severe" threats such as those Mungo made to Thompson could not be "tolerated."  J.A. 220; *see also* J.A. 241.

The arbitrator evaluated the evidence related to whether Mungo's decertification was "substantively proper," J.A. 22, and concluded that the Army "had ample reason to decertify him from the IRP because his actions raised serious doubts about his reliability," J.A. 24.  In particular, despite the fact that "[t]he Union did not argue that threats of the sort made by [Mungo] on May 8 were insufficient to justify decertification," J.A. 22, the arbitrator nonetheless specifically found that the Army acted reasonably in decertifying him because "[t]hreats to kill or hurt another employee are certainly sufficient to make a supervisor doubt an employee's ability to perform his job safely," J.A. 22.  We reject, therefore, Mungo's argument that the Army failed to demonstrate that it had a reasonable basis for its decertification decision.

Mungo further contends that the Army's decertification decision was procedurally improper, asserting that Whittington lacked IRP certification and decertification authority.  We do not find this argument persuasive.  After carefully evaluating the documentary evidence produced by the Army, as well as the hearing testimony, the arbitrator determined that while Army regulations gave the Fort Gordon Garrison Commander IRP certification authority, he delegated that authority in 2016 for an indefinite period to the Director of Emergency Services who, in turn, delegated the authority to Division Chiefs such as Whittington. J.A. 17–19, 25–28.  The arbitrator further determined that

while "the persons in those positions changed over time," there was no evidence that any "of the various delegations was ever revoked." J.A. 18. Given that the union "failed to present any authority holding that a delegee's authority automatically terminates when one of his or her superiors is replaced," J.A. 22, we conclude that the arbitrator did not err in concluding that Whittington was vested with delegated IRP certification and decertification authority at the time he revoked Mungo's certification.

Relatedly, Mungo asserts that he was deprived of due process because Whittington lacked IRP authority and therefore could not properly evaluate Mungo's rebuttal to his decertification. As we have previously made clear, federal employees generally "possess a constitutionally protected property right in their employment and are entitled to pre-deprivation due process." *Do v. Dep't of Hous. & Urb. Dev.*, 913 F.3d 1089, 1093 (Fed. Cir. 2019); *see also Ramirez v. Dep't of Homeland Sec.*, 975 F.3d 1342, 1352 (Fed. Cir. 2020) (concluding that "the arbitrator legally erred in concluding that [an employee] lacked a due process right to review and challenge the records of the [psychiatric] assessments underlying the Agency's removal decision"). On the other hand, however, "not every disciplinary action requires pre-deprivation notice and opportunity to be heard." *Do*, 913 F.3d at 1094.

Here, even assuming, for the sake of argument, that Mungo had a constitutional right to notice and an opportunity to be heard related to his decertification—as opposed to his removal—the factual premise for Mungo's constitutional argument is flawed. Because, as discussed previously, the arbitrator reasonably concluded that Whittington possessed IRP authority, there is no merit to Mungo's assertion that he was deprived of "the opportunity to be heard by an IRP deciding official who had the power to affect the outcome of the IRP determination," Br. of Pet'r 24. We have considered Mungo's remaining arguments but do not find them persuasive.

CONCLUSION

Accordingly, the decision of the arbitrator is affirmed.

COSTS

No costs.