NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MARCUS L. SWEARENGEN,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

---

2024-2050

---

Petition for review of the Merit Systems Protection Board in No. DA-0752-20-0450-I-2.

---

Decided:  January 23, 2026

---

DANIEL J. GAMINO, Daniel J. Gamino & Associates, PC, Oklahoma City, OK, argued for petitioner.

LAURA OFFENBACHER ARADI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent.  Also represented by ALBERT S. IAROSSI, PATRICIA M. MCCARTHY, BRETT SHUMATE.

---

Before MOORE, *Chief Judge*, DYK and TARANTO, *Circuit Judges*.

DYK, *Circuit Judge*.

Marcus C. Swearengen was removed from his civilian position by the Army ("the Agency") based on two charges: inappropriate remarks and creating a disruption in the workplace. The Merit Systems Protection Board (the "Board") reversed as to the first charge, sustained the second charge, and modified Mr. Swearengen's removal to a demotion. Mr. Swearengen petitions for review. We conclude that the remaining charge of causing a disturbance in the workplace is unsupported by substantial evidence and *reverse*.

## BACKGROUND

Mr. Swearengen was employed by the Army as an Electronics Mechanic Leader for the US Army Aviation and Missile Command, Aviation Center Logistic Command Missile and Fire Division in Fort Rucker, Alabama with duty in Fort Sill, Oklahoma. Mr. Swearengen's role was a position of leadership because he was responsible for relaying and enforcing supervisory instructions to subordinate employees. On April 27, 2020, the Agency issued Mr. Swearengen a notice of proposed removal for two charges: inappropriate remarks and creating a disruption in the workplace. To support the first charge, the Agency described an incident where Mr. Swearengen allegedly called another employee, Sylvester Boyd, "'stupid' repeatedly in a loud, elevated voice" and "continued to yell at Mr. Boyd." J.A. 68.[1] To support the second charge, the Agency alleged that "[o]n 12 March 2020, as [Mr. Swearengen] called Mr. Boyd 'stupid' repeatedly in a loud, elevated voice and continued to yell at Mr. Boyd in

---

[1]    Citations to the J.A. refer to the Joint Appendix filed by the parties in No. 24-2050. Dkt. No. 21.

the bay area, other employees heard [Mr. Swearengen] making a disruption in the workplace as they exited the bay area." *Id.*

On June 23, 2020, the deciding official determined that Mr. Swearengen should be removed from Federal Service based on both charges, without elaborating on the charges in the notice of proposed removal. Mr. Swearengen appealed his removal to the Board and his case was assigned to an administrative judge ("AJ").

On July 1, 2022, after a hearing, the AJ issued an initial decision sustaining Mr. Swearengen's removal on both charges. The AJ found "[Mr.] Boyd to be more credible when describing the incident" than Mr. Swearengen. J.A. 4030. Based predominantly on Mr. Boyd's testimony, the AJ concluded that Mr. Swearengen "made inappropriate remarks when he called Boyd 'stupid'" and that his "actions created noticeable noise in the workplace and . . . had an effect on the atmosphere of the workplace." *Id.* Mr. Swearengen petitioned the Board for review.

On May 9, 2024, the Board reversed the initial decision with respect to the first charge, affirmed the initial decision with respect to the second charge, and mitigated Mr. Swearengen's removal to a demotion. As to the first charge, inappropriate remarks, the Board determined "there [were] sufficiently sound reasons to overturn the [AJ's] determination that [Mr. Boyd] was more credible than [Mr. Swearengen]." J.A. 6. It noted the lack of witnesses to corroborate Mr. Boyd's testimony, and that Mr. Boyd had reasons to harbor malice towards Mr. Swearengen and "be less than candid in his testimony regarding [Mr. Swearengen.]" J.A. 7. Accordingly, the Board concluded that "only [Mr. Boyd] testified that [Mr. Swearengen] called him 'stupid'" and because "[it did] not find [Mr. Boyd's] testimony alone to be sufficiently persuasive to meet the preponderant evidence stand-

ard . . . [it found] that the agency failed to prove its first charge." *Id.*

As to the second charge, creating a disruption in the workplace, the Board affirmed the initial decision's conclusion that the Agency proved this charge by a preponderance of the evidence.  Despite the Board's conclusion that aspects of the second charge were not supported (the allegation that Mr. Swearengen called Mr. Boyd stupid) it concluded that the charge should be sustained because Mr. Swearengen created a disruption in the workplace and this charge "more broadly alleges that [Mr. Swearengen] spoke in a 'loud, elevated voice and continued to yell' at [Mr. Boyd], and that other employees heard the disruption."  *Id.* n. 5.[2] (quoting the notice of proposed removal, which is referring to Mr. Boyd's written statement).  The Board relied on the testimony of two employees, Mr. Jenkins and Mr. Farmer, as sufficient to support the charge.  The Board determined that "there is corroborating evidence establishing that [Mr. Boyd] and [Mr. Swearengen] engaged in a loud exchange that 'created noticeable noise' which was overheard by other employees."  J.A. 7.

Mr. Swearengen timely petitions for review.  We have jurisdiction under 28 U.S.C. § 1295(a)(9).

---

[2]    While Mr. Swearengen does not make this argument, we note that the Board's decision as to the second charge of creating a disruption in the workplace may run afoul of our holding in *Do v. Dep't of Hous. & Urb. Dev.*, 913 F.3d 1089, 1096–97 (Fed. Cir. 2019) because "[t]he Board's decision [was] inconsistent with the agency's charge and supporting specifications" and "the Board was required to limit its review to the grounds specified in the notice and relied on by the deciding official."

## DISCUSSION

We set aside the decision of the Board if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *accord Haebe v. Dep't of Just.*, 288 F.3d 1288, 1298 (Fed. Cir. 2002). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Brenner v. Dep't of Veterans Affs.*, 990 F.3d 1313, 1322 (Fed. Cir. 2021) (quoting *Shapiro v. Soc. Sec. Admin.*, 800 F.3d 1332, 1336 (Fed. Cir. 2015)).

Mr. Swearengen argues that substantial evidence does not support the Board's finding that he created a workplace disruption. Specifically, he argues that "Mr. Boyd admitted . . . there was in fact no 'disruption' in the workplace," by testifying that it was "[n]othing more than normal," Pet'r's Br. 13, and that the testimony of Mr. Farmer and Mr. Jenkins does not support the Board, *id.* at 13–16; Pet'r's Reply Br. 11. In response, the government acknowledges that Mr. Boyd's testimony does not support the charge, and that the Board did not rely on Mr. Boyd's testimony.[3] Nonetheless the government argues that three pieces of evidence support the charge: Mr. Farmer's written statement, Mr. Jenkins's written statement, and Mr. Jenkins's hearing testimony.

---

[3] To the extent that the Board may have relied on Mr. Boyd to support the allegation that Mr. Swearengen created noise, crediting Mr. Boyd's testimony would be inconsistent with the Board's finding that Mr. Boyd was not credible.

We conclude that, contrary to the Board's final order, there is not substantial evidence that Mr. Swearengen's actions created a disruption in the workplace.

First, Mr. Farmer's written statement does not provide substantial evidence to support that Mr. Swearengen spoke in a loud voice or that Mr. Swearengen created a disruption. The written statement states in full:

> I was in my office at the time of the incident involving Mr. Swearengen and Mr. Boyd. I heard some noise coming from the bay but Myself along with Mr. Jenkins and Mr. Guiden was headed out the back door to talk with Mr. Green. I did not hear the conversation involving that incident.

J.A. 295. Mr. Farmer's written statement only says that he heard "noise"—he did not testify that he heard a loud noise, that this noise was caused by Mr. Swearengen, or that the noise created a disturbance. In fact, the last sentence from Mr. Farmer's statement, specifying that he "did not hear the conversation," appears to contradict the government's argument that Mr. Swearengen made a loud, disruptive noise by yelling at Mr. Boyd. Mr. Farmer's statement does not provide substantial evidence to support that Mr. Swearengen created a disruption in the workplace.

Second, Mr. Jenkins's written statement does not provide substantial evidence to support the Board's finding. Mr. Jenkins did not state that Mr. Swearengen made a loud, disruptive noise. Indeed, in his written statement, Mr. Jenkins stated only that he "did not hear the conversation between [Mr. Boyd and Mr. Swearengen]" due to his location." J.A. 297.

Third, at the hearing, Mr. Jenkins testified that the incident between Mr. Boyd and Mr. Swearengen "disturb[ed] his work" because "the shop had been working in a toxic environment for quite a long time" and that the

incident "hindered further operations."   J.A. 3723 l. 23–3724 l. 8.   While Mr. Jenkins testified that someone said "[h]ey, someone come here[,] [s]omething's going on," and that he went to see "what the commotion was" and found out "Mr. Swearengen and Mr. Boyd had words with one another," he did not testify that Mr. Swearengen spoke in a loud voice or created a disturbance.  J.A. 3737–38.  His testimony accordingly does not provide substantial evidence for the Board's determination.

Because there is no substantial evidence to support the Board's decision, we reverse and do not reach Mr. Swearengen's remaining arguments.

## REVERSED

### COSTS

Costs to Mr. Swearengen.